[Cite as *State v. Williams*, 2020-Ohio-3682.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 28567 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2019-CR-1400 |
| v. | : | |
| | : | (Criminal Appeal from |
| LASTAN'LE BERNARD WILLIAMS, JR. | : |  Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of July, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JAMIE J. RIZZO, Atty. Reg. No. 0099218, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

BEN M. SWIFT, Atty. Reg. No. 0065745, P.O. Box 49637, Dayton, Ohio 45449
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Lastan'le Bernard Williams Jr. pled no contest to felonious assault in the Montgomery County Court of Common Pleas. In exchange for the plea, the State dismissed two other charges and firearm specifications. The trial court found him guilty and imposed seven years in prison, to be served consecutively to a sentence previously imposed in Warren County.

{¶ 2} Williams appeals from his conviction, challenging the length of his sentence and the imposition of consecutive sentences. For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 3} The presentence investigation report (PSI) and the complainant's statements at the sentencing hearing reveal the following facts.

{¶ 4} In 2016, while students at Sinclair Community College, Dennis Boddie met Williams, and the two became friends. Around 2018, Williams lost his housing when the person with whom he was staying asked him to leave. For a time, Boddie allowed Williams to stay with him, against Boddie's roommate's wishes. In June 2018, Williams's live-in girlfriend contacted Boddie and told him that Williams had been acting differently. The girlfriend asked Boddie if he would speak with Williams.

{¶ 5} On June 24, 2018, Boddie contacted Williams, and they agreed to meet and smoke marijuana. In the afternoon, the two men met and started walking toward a store. Approximately one block from the store, Boddie turned and saw Williams pointing a gun at him. Williams fired two rounds, one of which struck Boddie's leg around his right knee. Boddie turned his body and closed his eyes. Williams continued to fire, but the gun

jammed. When Boddie opened his eyes, he saw Williams running down the street. Williams yelled to Boddie, "Next time, I will kill your b*tch ass."

{¶ 6} At 3:34 p.m., Dayton police officers were dispatched to Boddie's location on the report of a shooting. They found Boddie with a single gunshot wound to his leg. At that time, Boddie reported that he was shot by an unknown individual while walking home from the store. Boddie stated that he had started running when he saw the gun. When medics arrived, they transported Boddie to the hospital, where he was treated for his injury. The police discovered three spent shell casings at the scene. Officers later interviewed Boddie, who described the weapon that had been used.

{¶ 7} On April 23, 2019, ten months later, Boddie went to the police department and reported that he had not been honest about the June shooting. Boddie told an officer what had actually occurred, described Williams, and produced a photograph of Williams using the Ohio Department of Rehabilitation and Correction website.

{¶ 8} In July 2019, Williams was indicted on three counts: (1) felonious assault, a felony of the second degree, with a firearm specification, (2) discharging a firearm on or near prohibited premises, a felony of the second degree, with a firearm specification, and (3) having weapons while under disability, a felony of the third degree. Williams subsequently pled no contest to felonious assault. The State dismissed the remaining two counts and all specifications.

{¶ 9} After a presentence investigation, the trial court sentenced Williams to seven years in prison. The court ordered the sentence to be served consecutively to the 18-month sentence Williams had received in Warren C.P. No. 18CR34528. At the time of Williams's conviction in this case, he had approximately four months remaining on his

Warren County sentence.

{¶ 10} Williams challenges his sentence on appeal.

## II. Sentence for Felonious Assault

{¶ 11} In his first assignment of error, Williams claims that his sentence was "excessive" and unsupported by the record.

{¶ 12} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.

{¶ 13} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 14} R.C. 2929.11 requires trial courts to be guided by the overriding purposes of felony sentencing. Those purposes are "to protect the public from future crime by the

offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 15} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record, if any.

{¶ 16} According to the PSI, Williams was 24 years old when the shooting occurred and 25 years old at sentencing. He had completed high school and one year of college; while in high school, he was suspended for fighting, but not expelled. Williams had work experience, with his longest period of employment being one year. Williams reported no current physical or mental health issues, but he indicated that he sustained a significant

head injury after a car accident in March 2017 and was diagnosed with ADHD as a child. Williams reported that he last used alcohol in 2015 and last used marijuana in 2016; Williams reported no other drug usage.

**{¶ 17}** Williams's criminal history consisted of two misdemeanor and three felony adult convictions; Williams had no juvenile record.  His two misdemeanor offenses were reckless operation of a motor vehicle (age 21) and theft (age 23).

**{¶ 18}** As for his felony record, in November 2013, Williams (age 19) was convicted in North Carolina of "accessory after the fact common law robbery"; the court sentenced him to 6 to 17 months in prison, with 151 days credit for time served, plus two years of supervised probation.  In January 2017 (age 22), he was convicted in Montgomery County, Ohio, of having weapons while under disability, for which he received community control.  Williams was arrested twice while on community control, and in May 2017, Williams was ordered to participate in the Secure Transition Offender Program (STOP). Williams was removed from STOP "after making threats and acting violent toward another resident."  Williams's supervision term was ultimately terminated in November 2018 as "incomplete" due to his conviction in Warren County.

**{¶ 19}** On November 16, 2018, Williams (age 24) was convicted in Warren County for having weapons while under disability and improper handling of a firearm in a motor vehicle; the court imposed 18 months in prison with 121 days of jail time credit.  The online docket in the Warren County case suggests that the Warren County offenses occurred in July 2018, shortly after the June 24, 2018 shooting in this case.

**{¶ 20}** Boddie spoke at the sentencing hearing.  He stated that he was "in complete disbelief" that Williams, to whom Boddie had been a good friend, would shoot

him.   Boddie indicated that he was shot in the leg, and "[t]he doctor said I was lucky that my kneecap didn't get blown off."   Boddie told the court that Williams "would've killed me."   Boddie also had spoken to the PSI investigator, stating that the shooting had caused him to be unable to work for three months, resulting in a loss of housing.   He also could not attend school for a semester, leaving him with certain educational expenses. Boddie expressed that he did not trust people any more, and some family members distanced themselves from Boddie because they were afraid of Williams.   Boddie requested a maximum sentence for Williams.

{¶ 21} At the sentencing hearing, the trial court indicated that it had reviewed the PSI and had considered "the purposes and principles of sentencing, [and] the seriousness and recidivism factors of the Ohio Revised Code including using the minimum sanctions to accomplish those purposes without unnecessarily burdening governmental resources." The trial court noted that Williams had, "starting from 2013, accessory to robbery in North Carolina, come to Montgomery County, weapons charge 2016; additional weapon charge in 2018 in which [Williams was] serving 18 months CRC from Warren County Common Pleas.   And now we have a felonious assault with an intent to kill."   The court imposed seven years in prison for the felonious assault.

{¶ 22} Williams argues that the trial court "may not have fully considered all relevant factors."   He asserts that Boddie was not hurt badly and that he (Williams) was remorseful and willing to accept responsibility for his actions.

{¶ 23} The imposed prison sentence was within the statutory range for a felony of the second degree, and the record reflects that the trial court complied with its obligation to consider R.C. 2929.11 and R.C. 2929.12, even though it did not orally discuss each

factor. The trial court's seven-year sentence for felonious assault was not contrary to law

{¶ 24} Williams had prior felony offenses, including gun-related offenses, and had previously been sentenced to prison. Williams had shown aggressive behavior in high school and while on community control. In committing the felonious assault, Williams shot Boddie in the leg, and there is nothing in the record to demonstrate remorse on Williams's part. Williams pled no contest to the offense, and he made no statement about the offense to the PSI investigator or to the court at sentencing. The gun's jamming appears to have been the only thing that prevented Williams from fatally shooting Boddie on June 24, 2018, and Williams told Boddie immediately after the shooting that he (Williams) would kill him (Boddie) the next time. As part of his plea, the State dismissed additional counts and firearm specifications. With the record before us, Williams's sentence was not clearly and convincingly unsupported by the record.

{¶ 25} Williams's first assignment of error is overruled.

### III. Consecutive Sentencings

{¶ 26} In his second assignment of error, Williams claims that "[t]he record does not support consecutive sentences."

{¶ 27} In general, it is presumed that prison terms will be served concurrently. R.C. 2929.41(A); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 16, 23 ("judicial fact-finding is once again required to overcome the statutory presumption in favor of concurrent sentences"). However, after determining the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual counts of a sentence consecutively to each other or to sentences imposed by other courts. R.C.

2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 28} In imposing consecutive sentences, the trial court made the required statutory findings.  The court found, both orally and in its judgment entry, that consecutive sentences were necessary to protect the public or to punish Williams and that consecutive sentences were not disproportionate to the seriousness of his conduct and to the danger that he posed to the public.  Lastly, the court found that Williams's history of criminal conduct demonstrated that consecutive sentences were necessary to

protect the public from future crime by him.

{¶ 29} On appeal, Williams argues that the trial court erred in relying on his criminal history alone to support both the finding that consecutive sentences were necessary to protect the public from future crime and the finding under R.C. 2929.14(C)(4)(c) that his history of criminal conduct demonstrated that consecutive sentences were necessary. He points to *State v. Corti*, 11th Dist. Lake No. 2016-L-129, 2018-Ohio-903, which discussed the interplay of those two findings, stating:

Finally, appellant argues that R.C. 2929.14(C) is redundant in that the need to protect the public from the defendant's future crimes is mentioned twice in the statute, first, as one of the two required findings for consecutive sentences in R.C. 2929.14(C)(4), and, second, as one of the three alternative findings in R.C. 2929.14(C)(4)(c). While there is some overlap in the statute, these two findings are not identical. Pursuant to R.C. 2929.14(C)(4), the court was required to find consecutive sentencing is necessary to protect the public from future crime. In contrast, the alternative finding in R.C. 2929.14(C)(4)(c) requires the court to find that the offender's criminal history shows that consecutive sentencing is necessary to protect the public. The language concerning the offender's criminal history is not included in R.C. 2929.14(C)(4), while it is included in R.C. 2929.14(C)(4)(c). This distinction shows that R.C. 2929.14(C)(4) can be demonstrated by something other than the offender's criminal history.

*Corti* at ¶ 33. Based on *Corti*, Williams claims that there must be some evidence other than a defendant's criminal history to support the imposition of consecutive sentences

when relying on R.C. 2929.14(C)(4)(c). He states that, because the trial court relied on his criminal history alone to support its findings, the imposition of consecutive sentences was contrary to law.

{¶ 30} Here, the record does not indicate that the trial court considered only Williams's criminal history in imposing consecutive sentences. The trial court stated at the sentencing hearing that it had reviewed the PSI, not just Williams's criminal history, and it did not detail the bases for its consecutive sentencing findings.

{¶ 31} Moreover, the trial court's findings were not clearly and convincingly unsupported by the record. Beginning with the finding under R.C. 2929.14(C)(4)(c), Williams's criminal history began in late 2013 with a conviction for being an accessory to a robbery, for which he received a prison sentence. He completed his probation supervision for that offense in December 2015. Later, Williams twice was convicted of having weapons while under disability, including in Warren County where he faced several gun charges. The record thus shows an ongoing history of gun-related offenses and two prison sentences within a five-year period. Therefore, we cannot say that the record clearly and convincingly fails to support the trial court's finding under R.C. 2929.14(C)(4)(c).

{¶ 32} As for the trial court's finding that consecutive sentences were necessary to protect the public from future crime, the court reasonably could have considered Williams's criminal history, particularly the repeated gun-related offenses, in its analysis. Assuming for sake of argument that additional information was required, the record also reflects that Williams had a history of threats and aggression that appeared to be escalating. Williams was suspended for fighting while in high school. When Williams

participated in the STOP program while on community control for a prior offense, he was removed from the program due to threats and "acting violent" toward another resident of the program. In committing the instant felonious assault, Williams assaulted a friend for no apparent reason and threatened to kill Boddie "the next time." When asked for his version of the incident, Williams responded, "No comment," and never expressed remorse for his actions. We cannot conclude that the record clearly and convincingly fails to support a finding that consecutive sentences were necessary to protect the public from future crimes and punish the offender.

{¶ 33} Williams does not challenge the trial court's finding that consecutive sentences were not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Regardless, there is support in the record for this finding as well.

{¶ 34} Williams's second assignment of error is overruled.

### IV. Conclusion

{¶ 35} The trial court's judgment will be affirmed.

. . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Jamie J. Rizzo
Ben M. Swift
Hon. Gerald Parker